CARMEN GUTIÉRREZ DE CROSAS, Plaintiff and Appellee, v. MARÍA LONGPRÉ BENÍTEZ ET AL., Defendants and Appellants.

No. 5186. Argued June 13, 1932.—Decided March 16, 1933.

*José Tous Soto, Leopoldo Feliú,* and *Juan de Guzmán Benítez* for appellants. *Blondet & Campillo* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

On November 26, 1919, the appellee Carmen Gutiérrez Comas, widow of Crosas, obtained from the appellants María Longpré Benítez et al., the sum of $40,000. The loan was covered by a mortgage wherein the debtor undertook to secure to the creditors the said sum of $40,000 at 8 per cent. In the said contract there was an additional clause by which the debtor nominally made a special agreement or charge for the payment of interest up to $1,000. Therein it was also agreed that if six monthly payments of interest were due and not paid the mortgage should become due. The debtor also made a second mortgage to the Banco Territorial y Agrícola.

On the 19th of April, 1923, the defendants-appellants under the summary process of the mortgage law brought a suit to recover the said $40,000, interest up to the amount of $3,919.72 and $1,000 for costs, disbursements, and attorney's fees. The maturity of the obligation was accelerated, as agreed upon, by reason of the failure of the debtor to pay twelve monthly payments of interest.

The debtor also agreed to pay taxes, but failed to pay the amount of $1,615.55 which the creditors paid. This $1,615.55

for taxes was not included in the original demand, but the creditors afterwards came into court, alleged the payment of the said amount, and asked that it should also be recovered in the mortgage proceeding, and when the property was advertised the said amount was also included.

At the auction sale the mortgaged property was bid in by the junior mortgagee, the Banco Territorial y Agrícola. After the adjudication, steps were initiated to have the marshal make the conveyance. Ultimately he did not do so but the conveyance was made by Camilo Crosas purporting to act under a power of attorney from his mother, the plaintiff-appellee in this case.

The said Banco Territorial y Agrícola, after recording the property in its own name sold the same to Doctor José Esteban Saldaña. The plaintiff conceived the idea that the mortgage proceedings were null and void. She also had the theory that no other suit to recover back the property could successfully be maintained, inasmuch as she or her attorneys had the impression that under the Mortgage Law or otherwise Doctor Saldaña was a third person. Therefore, the appellee began a suit against all her former mortgagees based upon section 38 of the Mortgage Law, as follows:

"As a consequence of the provisions of article 36, no instrument or contract shall be annulled or rescinded to the prejudice of a third person who shall have recorded his interest, for any of the following causes:

"1.—By reason of the revocation of donations in the cases permitted by the law, unless the donee shall fail to comply with the conditions recorded in the registry.

"2.—On account of legal redemption (retracto) in a sale or the right to acquire for the amount bid in emphyteusis.

"3.—On account of nonpayment of all or part of the price of the thing sold, if the record should not show that payment was postponed.

"4.—On account of a duplicate sale of the same thing when one of the sales has not been recorded.

"5.—On account of a lesion in cases 1 and 2 of article 1291 of the Civil Code.

"6.—On account of conveyances made for the purpose of defrauding creditors, with the exception of the cases mentioned in the preceding article.

"7.—On account of any other actions which special laws or statutes grant to specific persons for the rescission of contracts by reason of causes which the record does not expressly show.

"In any case in which the resolutory or rescissory action can not be brought against a third person in accordance with the provisions of this article the proper personal action may be brought for the recovery of damages from the person who may have caused them."

In the present suit the following nullities or vices were alleged:

"1. A lack of a previous calculation of the costs, disbursements, and attorney's fees.

"2. The recovery of interest in excess of the amount fixed in the mortgage.

"3. The lack of certainty in the demand for payment (*requerimiento*) with respect to the amount and the reasons for which the debtor was required to pay and that the demand was not directed to the marshal.

"4. The addition of the taxes paid by the mortgagees as a charge against the mortgaged property and the lack of a demand for payment of the same.

"5. The lack of an attachment of the property prior to the auction sale.

"6. The failure of the marshal to make the deed after the property had been adjudicated by him and a lack of the appellee to make the said deed because the property had been previously adjudicated by the marshal to another person."

The District Court of San Juan held that the demand in itself was sufficient and that it was not necessary to segregate the items of the interest or to make an apportionment of the same.

The court likewise held that it was unnecessary to make a previous attachment and a number of decisions of this Court support that view.

The district court similarly decided that a debtor may make the deed of conveyance himself despite the previous

adjudication by the marshal but held that in this case the attorney in fact did not have a sufficient power to make the said deed. The court agreed with the appellee with respect to the first, second, and fourth nullities as alleged *supra*.

After a trial and after making certain deductions by reason of the original debt the court rendered a money judgment in favor of the plaintiff in a certain sum.

We may say at the outset that no question was raised as to the validity of the original obligation or of its being secured by mortgage. The fact that the $40,000 were due and that the interest payments likewise were due is not in any way questioned. The court below clearly recognized and held that before a money judgment could be rendered in favor of appellee, the appellants were entitled to a credit by reason of the original loan.

Likewise, differently from the case of *Polanco* v. *Goffinet et al.*, 29 P.R.R. 111, no question was raised on the rights of the mortgagees to institute a mortgage proceeding, nor was this a case where the district court failed to obtain jurisdiction of the parties by a due summons or what not. The whole attack at the trial was laid on matters arising or attempted to be done during the progress of the mortgage proceeding itself.

We shall also promptly put out of view one of the principal contentions of the appellee, namely, that the property was sold without a previous adjudication of the amount of the costs following and citing our opinion in *Vidal* v. *District Court*, 40 P.R.R. 100. The case of *Arsuaga* v. *District Court*, 43 P.R.R. ——*, settles the point against the appellee. The writer, who also wrote the opinion in the *Vidal* case, *supra*, does not now entertain the idea that the costs in a mortgage proceeding should be considered like the costs in a bond. On the contrary he has reached the conclusion that in no event should the costs fixed in the mortgage be subject to a determination preliminary to an auction sale. In other words,

---

* NOTE: See Preface of this volume.

the writer is quite convinced that the costs fixed in the mortgage deed may be recovered in the mortgage proceeding, the same as any other amount expressly designated in the mortgage deed. The case of *Vidal* v. *District Court, supra,* must be considered to be overruled.

To the complaint filed in this case the defendants demurred. Among other things, prescription of the action was alleged and we have given the matter considerable attention. The theory was that as this was a suit sounding in damages and attributing blame or fault to the creditor the action was one under section 1869 of the Civil Code and should have been begun within a year. The appellants concede, of course, that in *Carmona et al.* v. *Cuesta,* 20 P.R.R. 215, if not in other cases, this Court had decided that the action here brought did not prescribe within a year. They strongly argue that these decisions are mistaken and contrary to the commentators and especially against an opinion of the Supreme Court of Spain of the 4th of December, 1916, published on the 2nd of June, 1917. 138 *Jurisprudencia Civil* 630.

We shall examine that case to a certain extent. The Supreme Court of Spain clearly decided that the action then before it was begun within a year and did not discuss at any great length whether the fault was one that arose by reason of an agreement or that fell directly within the provisions of Title XVI, Book IV, of the Civil Code, "obligations which arise without agreement." The facts were that certain lessees failed to surrender property at the termination of the lease and the resolution affirmed granted damages to the owners of the property. We ourselves question whether such a failure could be said to arise without an agreement, but we are of the opinion that the damages arose in that case by reason of an antecedent contract. The clear implied agreement of a lessee is to surrender the property at the termination of the lease.

The case of *Busó et al.* v. *Martínez,* 18 P.R.R. 994, in which the opinion was written by Mr. Justice MacLeary, is entirely

distinct. There a purchaser appropriated more land than was included in the deed and this was held to be a tort. We may add that the decision of the Supreme Court of Spain was rendered in 1916 and, supposing it to be directly applicable, it has not the same bearing or force as an opinion rendered before 1898.

In *Cangco* v. *Manila Railroad Co.*, 38 Philippine Reports 768, the court considers the distinction between negligence as the source of an obligation (*culpa aquiliana*) and negligence in the performance of a contract (*culpa contractual*). The court there says that the provisions of book IV, etc., are applicable to cases of extra-contractual *culpa* exclusively, and cites *Carmona et al.* v. *Cuesta, supra.* The difference is also shown in *Manila Railroad Co.* v. *La Compañía Transatlántica, etc.*, 38 Phil. Rep. 875. We find no reason for varying the principle of *Carmona et al.* v. *Cuesta, supra.* The liability in this case can not be considered to be extra-contractual.

One of the other grounds of the demurrer was that the complaint failed to tender the amount due under the mortgage deed, and that this failure made the action fatally defective. We have a certain amount of sympathy for the position of the appellants and perhaps, they are entirely right in maintaining that a complaint which seeks to recover money damages from creditors by reason of an invalid sale should tender the amount of the mortgage debt or the like. A complaint which fails to do so is bad and a demurrer thereto should be sustained. The only doubt that we have in this particular case is whether that defense was not abandoned. At the trial the court considered the amount of damages and rendered judgment for the difference between the value of the property and the supposed amount of the debt with interest. Hence a question may arise whether the complaint could not be considered as amended in accordance with our decision in *People* v. *Heirs of Valdés*, 31 P.R.R. 213. *Heirs of Franceschi* v. *González.* Opinion of the Circuit Court of Appeals of December 29, 1932 (62 F. (2d) 748).

We agree with the appellants that the action against the bank and the action against the senior creditors were distinct.

The alleged acts of the bank of which the appellee could complain were all done after the sale in the mortgage proceeding and the bank was not directly responsible for the supposed defects alleged in the present action, although, of course, if the alleged nullities destroyed the mortgage sale the bank would have acquired no title.

The appellants maintain that the appellee is estopped to insist upon the nullity of the mortgage sale for the reason that she accepted a balance of the mortgage proceeds through her attorney, Juan de Guzmán Benítez, Esq. The appellee maintains that she did not retain Mr. Guzmán Benítez personally and that her son did not have a sufficient power of attorney to do so.

As outlined, the property was sold at auction and an adjudication made to Leopoldo Venegas in representation of the Banco Territorial y Agrícola. Subsequently, among other proceedings, Camilo G. Crosas, son of the plaintiff Carmen Gutiérrez Comas, widow of Crosas, acting under an alleged power of attorney appeared before a notary and conveyed the property to the Banco Territorial y Agrícola. The power of attorney was attacked.

Thereafter also a certain distribution of the proceeds was made. Juan Guzmán Benítez authorized by Camilo G. Crosas, appeared in court to consent or arrange the said distribution. The plaintiff maintained and attempted to prove at the trial in the present case that she never authorized Juan Guzmán Benítez to appear for her. The appellants maintain that this appearance in itself was a confirmation.

As to the authority of Juan Guzmán Benítez to appear for Carmen Gutiérrez, the appellants, citing various cases of this Court, say that the appearance of an attorney raises a strong presumption of authority. We are not disposed to deny this general proposition. However, in a proceeding that is not distinctly adversary, but for most purposes must be con-

sidered *ex parte,* we have some question whether in the plenary suit to challenge the mortgage proceeding the plaintiff has not the right to question the authority of the attorney to appear in a mortgage proceeding as she could by motion or direct attack in an adversary proceeding.

We likewise think that there are indications that plaintiff knew and consented to the acts of her son. The evidence clearly discloses that she knew of subsequent proceedings, and that she did not deny that she knew that her son was making the deed directly to the bank. We find it unnecessary to pass upon this question of fact, because of the more salient matter of the power of attorney given to the son which we find ample for various reasons.

The said power of attorney, which was called a general one, gave the attorney in fact the right to mortgage or submortgage the property of the appellee, to lease and sublease, to exchange all the property and real rights of the appellee, to pay or recover credits (*créditos*) in favor of or against the appellee, to execute all classes of businesses in the name of the appellee although not mentioned in the power of attorney, and to execute and sign all documents and deeds necessary for the purpose of the power.

Under such ample power we agree with the appellants that the right to name an attorney was inherent and indispensable. In no other way on many occasions could credits be recovered, paid or defended.

Similarly, the right to pay and recover credits authorized the attorney in fact to make the deed to the bank that was finally made. He was authorized to make any deed within the field of his other powers.

Perhaps the principal reason for the reversal in this case was that there was no such defect in the mortgage proceeding as to justify the court in rendering judgment in favor of the appellee. We have already disposed of the matter of the costs on which so much stress was laid.

We can not agree with the appellee or the court below that the mortgage creditors were limited to the sum of one thousand dollars for interest, inasmuch as although that sum was specifically mentioned the whole mortgage deed tended to show that the parties agreed to pay interest in a much greater amount. The mortgage deed provided for a payment of the principal with interest at 8 per cent; also provided that the mortgage should become due if the mortgagors failed to pay six months interest and for such a default the suit was brought. The intention of the deed to cover all interest was clear and the additional clause covering $1,000 could not be considered as a limitation.

The appellee maintains and the court held that the mortgage proceeding was defective because of the manner in which the taxes were added to the amount of the debt and all without a previous demand upon the mortgage debtor.

Section 332 of the Political Code provides that in the settlement of the estates of bankrupts and decedents, the taxes owing by such estates shall be preferred before all other debts. Section 333 of the same code does not contain exactly this provision but it says:

"Any person having a lien upon property may pay the taxes and surcharges thereon at any time after said taxes have become delinquent, and the same shall be added to his or her lien and be recovered with the rate of interest borne by the lien. A tenant or lessee of real property may pay the taxes and surcharges thereon at any time after the same may have become delinquent and may deduct the same from his rent."

The taxes were overdue and the creditors paid them after filing the initial writing. Now, while it is true that the creditors had a right to charge the amount of the taxes to the mortgage debt and perhaps even insist that the taxes should be paid out of the proceeds of the sale before the property passed to the purchaser or before a balance of the proceeds, if any, was turned over to the debtor, if a sale took place by reason of various defaults on the part of the debtor, the lat-

ter should be given an opportunity to pay the taxes. It could not therefore be said that the sale was made for default in the payment of taxes.

However, as the fact was unquestioned that the debtor owed the amount of the taxes and the creditors paid them, we question seriously whether in an action to recover damages against the creditors the debtors would have no claim or compensation without showing that the taxes so paid and included in the notice of the mortgage sale had really prejudiced the plaintiff-debtor. In any event the action of the creditors in selling the property was ratified or confirmed by the action of the debtor and this defect needs no further consideration.

We have already discussed the fact that the attorney in fact had sufficient authority to act for his mother. Therefore, the deed made in her name by him must be considered valid and the appearance of Juan Guzmán Benítez at the instance of Camilo Crosas as attorney for the appellee to dispose of the proceeds of the sale must likewise be considered sufficient and to constitute a confirmation. It is unnecessary, therefore, to consider the assignments of error regarding the value put upon the property or the deductions to be made.

This case was considered and decided in the court below before our opinion and judgment in *Anaud* v. *Martínez et al.*, 40 P.R.R. 641. The appellants maintain that by reason of that decision the action did not lie but that the proper recourse of the plaintiff would have been to attempt to recover back the property. As the matter was not discussed in the court below we refrain from entering into a consideration of the application of the said case to the facts of the present suit. Suffice it to say that whether the plaintiff was mistaken or not in the theory of her action, nevertheless even under the theory of the plaintiff her action failed.

For the reasons assigned the judgment must be reversed and the complaint dismissed.

Mr. Justice Hutchison concurs in the result.